UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN MICHAEL DE LONG,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BRIAN CRAIG PHELPS, et al.,<br><br>　　　　　Defendants. | Case No. 3:12-cv-00490-MMD-VPC<br><br>ORDER |

Plaintiff sent a copy of the attached letter to the Court. The Court has redacted Plaintiff's social security from page 12 of the attached. Plaintiff is admonished that *ex parte* communications with a judge are inappropriate in most circumstances. *See* Local Rules, Part II, LR 7-6. Moreover, a document requesting a Court order must be styled as a motion, not a letter (*see* F.R.C.P. 7). Letters to a judge will be disregarded. While the Court directed for the attached letter to be filed, the Court will not take any action in response to the letter.

DATED THIS 10th day of July 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

STEPHEN M. DE LONG
720 WEST FOURTH STREET
APARTMENT NUMBER 21
RENO, NEVADA 89503
(775) - 323 - 1851 ex. 221

JUNE 27, 2013                                                                                           **FINAL NOTICE**

WASHOE COUNTY DISTRICT ATTORNEY
CIVIL DIVISION OFFICE
1 SOUTH SIERRA STREET
RENO, NEVADA 89501
(775) 337 - 5723

> **DEMAND FOR THE RETURN OF PERSONAL PROPERTY SEIZED FROM PUBLIC STORAGE
> RE : PLAINTIFF STEPHEN M. DE LONG vs. DEFENDANT BRIAN CRAIG PHELPS ET. AL.
> UNITED STATES DISTRICT COURT DOCKET NO. 3 :12 CV - 00490 – MMD - VPC**

**TO DEPUTY DISTRICT ATTORNEY MARY KANDARAS :**

**ON SEPTEMBER 12, 2012,** the above named Plaintiff had timely filed a civil rights action in the United States District Court for the Northern District of the State of Nevada, under the provisions of Title 42 U.S.C. Section 1983. This Federal Court action is brought against [ state actor ] Defendant's Brian Craig Phelps, Patrick N. Flanagan, Thomas P. Beko, and Municipal Defendant Washoe County.

**THIS CIVIL ACTION** stems from events that occurred on September 13, 2010. Upon which time, said [ state actor ] Defendant's Brian Craig Phelps, Patrick N. Flanagan, and Thomas P. Beko, were acting under the color of state law to enforce a civil judgment that was improperly entered by the Second Judicial District Court in violation of the Plaintiff's federal rights to a jury trial; [ and ] acting in concert with said Municipal Defendant Washoe County, had unlawfully seized all of the Plaintiff's personal property secured at Public Storage without a Writ of Execution to Enforce a Civil Judgment. The foregoing state court action was instigated without probable cause, and recklessly undertaken in direct violation with the Plaintiff's federally protected rights to be free from unwarranted searches into his privacy and security, and rights to be free from illegal seizures of his personal property, as guaranteed under the 4th and 14th Amendments of the United States Constitution.

**THIS CIVIL ACTION** is brought pursuant to Title 42 U.S.C. Section 1983, to recover damages for all personal injuries caused by the Defendant's deprivations of the Plaintiff's federally protected rights under the color of state law, and for violation of the Plaintiff's federally protected rights to be free from unwarranted searches into his privacy and security, and illegal seizures of his personal property, as guaranteed under the 4th and 14th Amendments of the United States Constitution.

**SUPPLEMENTAL JURISDICTION** is invoked with the Federal Court upon all federal law claims for Declaratory, Equitable, and Injunctive relief, in accordance with the provisions of Title 28 U.S.C. Section 1291, Section 1331, Section 1332, Section 1343, [ and ] Section 1361.

**SUPPLEMENTAL JURISDICTION** is invoked with the Federal Court upon all state law claims for the return of all the Plaintiff's personal property that was previously secured at Public Storage; and for compensatory and treble damages of all said personal property that was unlawfully seized, stolen, and taken away, from the Plaintiff's pre paid storage facility by acts that constituted fraud, burglary, and grand larceny, in accordance with the provisions of N.R.S. Section 41.580.

> **DEMAND FOR THE RETURN OF PERSONAL PROPERTY SEIZED FROM PUBLIC STORAGE**
> **RE: PLAINTIFF STEPHEN M. DE LONG vs. DEFENDANT BRIAN CRAIG PHELPS ET. AL.**
> **UNITED STATES DISTRICT COURT DOCKET NO. 3:12 CV - 00490 – MMD - VPC**

### PAGE 2

**STATEMENT OF RELEVANT FACTS:**

**ON APRIL 04, 2003**, said Plaintiff **STEPHEN M. DE LONG**, and his elderly mother, namely **MARGARET M. DE LONG**, [ now deceased ], had entered into a rental agreement with the Manager of Public Storage, and by virtue of the foregoing contractual agreement, were the sole occupants of Public Storage Unit 1089, and were the sole vested owners of all personal property secured therein. See } *Original Public Storage Rental Agreement, which is attached and marked as Exhibit 1.*

**AT FEBRUARY 09, 2006**, said Defendant **BRIAN CRAIG PHELPS**, was acting under the color of state law as a private lawyer, not authorized to practice law, and upon information and belief, had filed a frivolous pro person Debt Collections Action in the Second Judicial District Court, solely with the malicious intent to collect attorney fees for the unauthorized practice of law, and to illegally obtain cash money and personal property from the Plaintiff's estate by acts that constituted fraud, all in direct violation with the Plaintiff's federally protected rights to equal protection of the laws.

**AT ALL TIMES HEREIN ALLEGED**, said Defendant **PATRICK FLANAGAN**, was acting under the color of state law as a private lawyer licensed to practice law, and upon information and belief, had unlawfully assisted a non lawyer in the prosecution of a frivolous Debt Collections Action, solely with the malicious intent to collect attorney fees for the unauthorized practice of law, and to illegally obtain cash money and personal property from the Plaintiff's estate by acts that constituted fraud, all in direct violation with the Plaintiff's federally protected rights to equal protection of the laws.

**AT ALL TIMES HEREIN ALLEGED**, said Defendant **THOMAS BEKO ESQ.**, was acting under the color of state law as a private lawyer licensed to practice law, and upon information and belief, had unlawfully assisted a non lawyer in the prosecution of a frivolous Debt Collections Action, solely with the malicious intent to collect attorney fees for the unauthorized practice of law, and to illegally obtain cash money and personal property from the Plaintiff's estate by acts that constituted fraud, all in direct violation with the Plaintiff's federally protected rights to equal protection of the laws.

**AT ALL TIMES HEREIN ALLEGED**, Defendant **WASHOE COUNTY**, is a municipal corporation authorized to delegate powers to other agencies, and upon information and belief, District Attorney **RICHARD A. GAMMICK** has created an official policy, authorizing the Second Judicial District Court to illegally deprive indigent defendants of the right to a jury trial, in civil actions brought by parties who have family members and lawyers employed within the same court that civil action is pending, all in direct violation with the Plaintiff's federally protected rights to equal protection of the laws.

**AT ALL TIMES HEREIN ALLEGED**, Defendant **WASHOE COUNTY**, is a municipal corporation authorized to delegate powers to other agencies, and upon information and belief, District Attorney **RICHARD A. GAMMICK** has created an official policy, authorizing the Sheriff of Washoe County to illegally seize personal property from another to enforce a civil judgment without notice, and without a valid Writ of Execution to Enforce a Civil Judgment, issued in the name of the State of Nevada. all in direct violation with the Plaintiff's federally protected rights to equal protection of the laws.

---

**DEMAND FOR THE RETURN OF PERSONAL PROPERTY SEIZED FROM PUBLIC STORAGE RE : PLAINTIFF STEPHEN M. DE LONG vs. DEFENDANT BRIAN CRAIG PHELPS ET. AL. UNITED STATES DISTRICT COURT DOCKET NO. 3 :12 CV - 00490 – MMD - VPC**

---

## PAGE 3

**ON SEPTEMBER 13, 2010**, all said Defendant's were acting under the color of the state law to enforce a disputed civil judgment that was improperly entered by the Second Judicial District Court in direct violation with the Plaintiff's federally protected constitutional rights to a trial by jury, and in violation of the Plaintiff's federally protected rights to be heard before a fair and impartial tribunal, as guaranteed under the 7th and 14th Amendment's of the United States Constitution.

**ON SEPTEMBER 13, 2010**, the above named Defendant's had illegally gained access into the Plaintiff's pre paid storage facility without a valid Search Warrant signed by a neutral magistrate, and otherwise, had unlawfully subjected the Plaintiff to an arbitrary intrusion into his privacy and security, without any probable cause, all in direct violation with the Plaintiff's federally protected rights to be free from unwarranted searches, and in violation of his federal rights to equal protection of the laws, as guaranteed under the 4th and 14th Amendment's of the United States Constitution.

**ON SEPTEMBER 13, 2010**, the above named Defendant's had illegally seized personal property from the Plaintiff's pre paid storage facility without a Writ of Execution to Enforce a Civil Judgment, and otherwise, had unlawfully subjected the Plaintiff to an arbitrary seizure of his personal property, without any probable cause, all in direct violation with the Plaintiff's federally protected rights to be free from unwarranted seizures, and in violation of his federal rights to equal protection of the laws, as guaranteed under the 4th and 14th Amendment's of the United States Constitution.

**STATEMENT OF DAMAGES :**

**IN ACTING AS ALLEGED**, the above named Defendant's had illegally seized, and taken away, 50 large boxes of **EXEMPT PROFESSIONAL LIBRARIES**, purchased by both the Plaintiff and his mother, which contained a huge inventory of Non Sports cards sets; Topps MLB Baseball card sets; MLB Baseball coin sets; NBA Basketball card sets; NFL Football card sets; NHL Hockey card sets; Kellogg's 3D Baseball card sets & Football card sets; McDonalds Football card & Hockey card sets; 7 - Eleven 3D Baseball coin sets; 7 - Eleven 3D Football coin sets; Sportsflics 3D Baseball card sets; Denny's Hologram Baseball card sets; Pro Set NFL Football card sets; Upperdeck Baseball card sets; Hockey card sets; Basketball card sets; Topps Olympic card sets; Topps U.S.F.L. Football card sets; Topps Mickey Mantle Foil card sets; Skybox N.B.A. Basketball card sets; Pinnacle Football card sets; Stop & Go 3D Football card sets; Fleer Baseball card sets; Basketball card sets; Football card sets; Donruss P.G.A. Golf card sets; D.C. Universe Action Figures; Toy Biz Marvel Cover Action Figures; Mego Star Trek Figures; Mego Chips Figures; Mego Happy Days Figures; Mego Super Heroes Figures; Mego Dukes of Hazard Figures; Galoob W.W.F. Wrestling Figures; Kenner D.C. Superpowers Figures; Kenner Star Wars Figures; Todd McFarland Movie Maniac Figures; Todd McFarland Spawn Figures; Todd McFarland Kiss Figures; Full Moon Puppet Master Figures; Mattel Marvel Secret Wars Figures; Mattel Elvis Presley Figures; Sports Illustrated Magazines No.'s 1- 50; Top Comics; Charlton Comics; D.C. Comics; Marvel Comics; Dell Comics; Gold Key Comics; Zee Toys - Die Cast Military Vehicles; Corgi Die Cast Vehicles; Matchbox Die Cast Vehicles; Action Nascars; Racing Champions Nascars; Winners Circle Nascars; Mattel Hot Wheels; Tomy Pocket Cars; Johnny Lightning Die Cast Cars; and many more collectibles, all with an ebay market value [ over ] **$75,000.00**.

---

**DEMAND FOR THE RETURN OF PERSONAL PROPERTY SEIZED FROM PUBLIC STORAGE
RE : PLAINTIFF STEPHEN M. DE LONG vs. DEFENDANT BRIAN CRAIG PHELPS ET. AL.
UNITED STATES DISTRICT COURT DOCKET NO. 3 :12 CV - 00490 - MMD - VPC**

---

### PAGE 4

**IN ACTING AS ALLEGED**, the above named Defendant's had illegally seized, and taken away, 18 large boxes of **EXEMPT HOUSEHOLD GOODS**, purchased by both the Plaintiff and his mother, which contained an inventory of Sterling Silverware; Churchill of London Blue Willow Fine China; two Tiffany Lamps; one Philips color television in the box; one Philips VHS - DVD player in the box; one Philips stereo in the box; one Sony color television in the box; one Sony DVD player in box; one Sony stereo in the box; 820 brand new videos; one Sony Vaio laptop computer in the box; one Dell Latitude laptop computer in the box; two Entertainment Centers; two Antique Rocking Chairs; two Antique Mirrors; Sears Craftsman Hand Tools; Sears Power Tools; Sears Craftsman Tool chest; Sports Equipment; and Clothing Apparel; all with a estimated market value [ over ] **$15,000.00**.

**IN ACTING AS ALLEGED**, the above named Defendant's had illegally seized, and taken away, 12 large boxes of **EXEMPT PRIVATE LIBRARIES**, that inheritably belongs to the Plaintiff and his sister, which contained an inventory of Family Picture Albums; Family Wedding Rings & Jewelry; Vatican Coins and Stamps; 19th Century Silver Coins; 1970's Jr. High and High School Year Books; Diplomas; 1970's P.A.L. Football Trophies; 1970 San Francisco Pop Warner Joe Lacey Bowl Trophy; 1971 Eureka Redwood Bowl Plaque; 1980's A.S.A. Softball Trophies; 1980's A.A.U. Boxing Trophies; 1984 United States Railroad Olympics Bronze Medal; United States Railroad Annual Service Awards; Lionel Southern Pacific and Union Pacific Train Sets; Rudolph's Misfit Toys; Christmas Ornaments; one "Star Trek The TV Series Cast" autographed photo; one "Happy Days Cast" autographed photo; one "All In The Family Cast " autographed photo; one "The Honeymooners Cast" autographed photo; Walt Disney and Wizard of Oz Figurines; Children's Classical Story Books; Time Life Library Books; True Crime Library Books; and much more; all with a estimated market value [ over ] **$53,500.00**.

**IN ACTING AS ALLEGED**, the above named Defendant's had illegally seized, and taken away, 3 large boxes of **EXEMPT ART WORK**, that inheritably belongs to both the Plaintiff and his sister, which contained one Original George Sumner Tropical Waterfall Painting, with an estimated market value [ over ] **$25,000.00**; one Margaret Keane San Francisco China Town Girl lithograph, signed by Walter Keane, with an estimated market [ over ] **$1,500.00**; [ and ] one Original Oscar Claude Monet Landscape Painting, with an estimated market value [ over ] **$20,000,000.00**.

**IN ACTING AS ALLEGED**, the above named Defendant's had illegally seized, and taken away, **EXEMPT MEDICAL EQUIPMENT**, and 5 boxes of confidential records, that belongs to the Plaintiff and to the immediate members of his family; which contained a large inventory of Medical Records; Social Security Records; Worker's Compensation Files; Birth Certificates; Certified Citizenship Papers; Bank Records; ebay Purchase Records; Receipts for Retail Merchandise; Wills; Insurance Policies; Confidential Legal Files; and much more, all with an undetermined market value.

**IN ACTING AS ALLEGED**, the above named Defendant's had illegally seized personal property from the **ESTATE OF MARGARET DELONG**, who is not a party to the foregoing state court action, and otherwise, the seizure of the above described personal property was excessive and oppressive, and was recklessly undertaken in direct conflict with both state probate and state exemption laws.

> **DEMAND FOR THE RETURN OF PERSONAL PROPERTY SEIZED FROM PUBLIC STORAGE**
> **RE: PLAINTIFF STEPHEN M. DE LONG vs. DEFENDANT BRIAN CRAIG PHELPS ET. AL.**
> **UNITED STATES DISTRICT COURT DOCKET NO. 3:12 CV - 00490 - MMD - VPC**

### PAGE 5

**IN ACTING AS ALLEGED**, and with complete indifference of the Plaintiff's constitutional rights, the above named Defendant's had knowingly, willfully, and illegally, gained access into the Plaintiff's pre paid storage facility under false pretenses, solely with the malicious intent to take possession of all the above described personal property secured therein by acts that constituted fraud, burglary, and grand larceny; and as a direct and proximate result of the tortious conduct of said Defendant's, the above named Plaintiff has sustained actual damages in the sum of **$20,169,500.00**.

**IN ACTING AS ALLEGED**, and with complete indifference of the Plaintiff's constitutional rights, the above named Defendant's had knowingly, willfully, and maliciously, caused the Plaintiff to suffer public humiliation, nightmares, sleep deprivation, anxiety, chronic migraine headaches, and fatigue, and otherwise, the Plaintiff has suffered substantial emotional distress, and great physical pain; and as a direct and proximate result of all said personal injuries inflicted upon his person, the Plaintiff has incurred medical and incidental expenses, all to general and punitive damages.

**SUMMARILY**, based on the fact that said Municipal Defendant Washoe County Sheriff's Department had knowingly and illegally seized all of the Plaintiff's personal property contained at Public Storage without a valid Search Warrant, and without a valid Writ of Execution to Enforce a Civil Judgment; then said Municipality Defendant Washoe County can be held liable for all said damages under the *Doctrine of Respondeat Superior* for the tortious conduct of all said [state actor] Defendant's.

**DEMAND FOR CORRECTIVE ACTION:**

**WHEREFORE**, based on the foregoing reasons, demand is now heretofore duly made upon said Municipal Defendant Washoe County, for the immediate return of all said personal property which the Sheriff's Department had illegally seized from the Plaintiff's storage facility on September 13, 2010; and that all said personal property shall be properly returned to the Plaintiff in it's original condition, within 20 business days from the date of this notice.

**ALTERNATIVELY**, the Plaintiff will seek a judgment award for compensatory damages in the sum of **$20,169,500.00**, for the actual retail market value of all said personal property that was illegally seized, stolen, and taken away, from his storage facility, and from his deceased mother's estate, as a direct and proximate result of the tortious conduct of all said [state actor] Defendant's.

**RESUBMITTED** on this _27th_ day of June 2013, in the City of Reno, and County of Washoe, in for the State of Nevada.

                                                        _____
                                                        STEPHEN MICHAEL DE LONG

**CC: THE HONORABLE MIRANDA M. DU**
   **UNITED STATES DISTRICT JUDGE**
   **NORTHERN DISTRICT OF NEVADA**

---

**DEMAND FOR THE RETURN OF PERSONAL PROPERTY SEIZED FROM PUBLIC STORAGE**
**RE: PLAINTIFF STEPHEN M. DE LONG vs. DEFENDANT BRIAN CRAIG PHELPS ET. AL.**
**UNITED STATES DISTRICT COURT DOCKET NO. 3:12 CV - 00490 – MMD - VPC**

---

PAGE 6

## AFFIDAVIT OF PERSONAL MAILING SERVICE
## UNITED STATES DISTRICT COURT NO. 3 : 12 - 00490

**I, STEPHEN MICHAEL DE LONG,** state :

**I AM A LEGAL CITIZEN** of the United States, and a lawful resident in the City of Reno, County of Washoe, in and for the State of Nevada. I am over eighteen years old, and my current mailing address is 720 West Fourth Street, Apt. #21, Reno, Nevada 89503.

That on this 27TH day of JUNE 2013, I personally served a true copy of :

### DEMAND FOR THE RETURN OF PERSONAL PROPERTY
### ( ILLEGALLY SEIZED FROM PUBLIC STORAGE UNIT #1089 )

**TO BE SERVED BY HAND**, and by First Class Mail United States Postage Prepaid upon the following listed address :

| | |
|---|---|
| THE HONORABLE MIRANDA M. DU<br>UNITED STATES DISTRICT JUDGE<br>NORTHERN DISTRICT OF NEVADA<br>400 SOUTH VIRGINIA STREET<br>RENO, NEVADA 89501 | RICHARD A. GAMMICK / MARY KANDARAS<br>WASHOE COUNTY DISTRICT ATTORNEY<br>CIVIL DIVISION OFFICE<br>1 SOUTH SIERRA STREET<br>RENO, NEVADA 89501 |

### AFFIRMATION N. R. S. 239B.030

**THE UNDERSIGNED** does hereby affirm under the penalty of perjury that the foregoing statements are true and correct, and the preceding document entitled DEMAND FOR THE RETURN OF PERSONAL PROPERTY, does not contain the Social Security Number of any known person.

_6-27-2013_
( DATED )

_[signature]_
STEPHEN MICHAEL DE LONG

**EXHIBIT 1**

**EXHIBIT 1**



# RENTAL AGREEMENT

THIS RENTAL AGREEMENT is executed in duplicate this __04/04/2003__, by and between, Public Storage, Inc., as Owner or agent for Owner, 4875 S. MC CARRAN BL., RENO, NV 89502, ("Owner"), Tax ID# 95-3551121, and __Stephen Delong__ ("Occupant") whose address and alternate contact address are as follows:

| Occupant Address | Alternate Name and Address |
|---|---|
| 6155 Plumas #182 | Margaret Delong |
| Reno, NV 89509 | 6155 Plumas |
| (775) 825-3185 | Reno, NV 89509 |
| ID Number: 0800861971 | Phone: (775) 825-3185 |

Enclosed/Parking Space No. __1089__ (approximately __12.0 x 12.0__) Account No. __5951512__  **No. 11741443 - 20282NV**

Occupant advises Owner that Occupant intends to allow the following individuals to have access to the Premises:

Margaret Delong

FEES AND CHARGES:

__$105.00__ Monthly Rent (Due on or before 1st of Month)  __$50.00__ Lien Handling Charge after Thirty One (31) Days (Whether or not Sale Occurs)

__$10.00__ New Account Administration Fee (Non-Refundable)  __$15.00__ Late Charge after 20th of the Month

__$15.00__ Late Charge after 10th of the Month  __$0.00__ Lien Sale Fee

By placing his **INITIALS HERE** _____, Occupant acknowledges that the above information is correct, that all payments are due before the close of business on the day indicated to be applied to the oldest delinquency first, including fees which may have accrued since the last payment was received, that he understands and agrees to pay the fees and rent as noted above and that Owner reserves the right to require that rent, fees and charges be paid in cash, certified check or money order.

It is agreed by and between Owner and Occupant:

1. PURPOSE AND DESCRIPTION OF PREMISES. The parties have entered into this Rental Agreement for the purpose of leasing or renting certain space as herein described and with the express understanding and agreement that **no bailment or deposit of goods for safekeeping is intended or created hereunder.** Owner leases to Occupant and Occupant leases from Owner the above-noted space (hereinafter the "Premises") located at the above-referenced address of Owner and included in a larger facility at such address containing similar leased real property and common areas for the use of Occupant and other occupants (the entire facility is hereinafter referred to as the "Property"). **Occupant has examined the Premises and the Property and, by placing his INITIALS HERE _____ acknowledges and agrees that the Premises and the common areas of the Property are satisfactory for all purposes for which Occupant shall use the Premises or the common areas of the Property.** Occupant shall have access to the Premises and the common areas of the Property only during such hours and days as are regularly posted at the Property.

2. TERM AND RENT. The term of this Rental Agreement shall commence as of the date written above and shall continue from the first day of the month immediately following on a month-to-month occupancy until terminated. Occupant shall pay Owner as a monthly rent, without deduction, prior notice, demand or billing statement, the sum noted above (plus any applicable tax imposed by any taxing authority) in advance on the first day of each month. If the term of this Rental Agreement shall commence other than on the first day of the month, Occupant shall pay a full month's rent for the first month and shall owe a pro rata portion of the second month's rent. Occupant understands and agrees that under no circumstances will Occupant be entitled to a refund of the first month's rent paid upon execution of the Rental Agreement, and, if this Rental Agreement terminates other than on the last day of the month, Occupant shall not be entitled to a refund of a pro rata portion of the rent for the month in which the termination occurred, but, if termination occurs on or before the fifteenth (15th) day of the month, Occupant may pay only the rent (and any applicable tax) that accrues from the first (1st) day of the month until the date of termination. The monthly rent and/or other fees as noted above may be adjusted by Owner effective the month following written notice by Owner to Occupant specifying such adjustment, which such notice shall be given not less than thirty (30) days prior to the first day of the month for which the adjustment shall be effective. Any such adjustment in the monthly rent shall not otherwise affect the terms of this Rental Agreement and all other terms of this Rental Agreement shall remain in full force and effect.

3. USE OF PREMISES AND PROPERTY AND COMPLIANCE WITH LAW. Occupant shall store only personal property that belongs to Occupant. Because the value of the personal property may be difficult or impossible to ascertain, **Occupant agrees that under no circumstances will the aggregate value of all personal property stored in the Premises exceed, or be deemed to exceed, $5,000 and may be worth substantially less than $5,000.** Occupant shall not permit any Hazardous Materials (as defined below) to be stored in the Premises or the Property or store any improperly packaged food or perishable goods, flammable materials, explosives or other inherently dangerous material, in the Premises or the Property. Occupant shall not store any personal property on the Premises which would result in the violation of any law or regulation of any governmental authority, including with limitation, all laws and regulations relating to Hazardous Materials, waste disposal and other environmental matters, and Occupant shall comply with all laws, rules, regulations and ordinances of any and all governmental authorities concerning the Premises and its use. For purposes of this Rental Agreement, "Hazardous Materials" shall include but not be limited to any hazardous or toxic chemical, gas, liquid, substance, material or waste that is or becomes regulated under any applicable local, state or federal law or regulation. Occupant shall not use the Premises in any manner that will constitute waste, nuisance or unreasonable annoyance to other occupants in the Property nor perform any welding in the Property. Occupant acknowledges and agrees that the Premises and the Property are not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property such as (but not limited to) books, records, writings, works of art, objects for which no immediate resale market exists, objects which are claimed to have special or emotional value to Occupant and records or receipts relating to the stored goods. Occupant agrees that the value of any such items shall not exceed for any purpose the salvage value of the raw materials of which the item is constituted. Occupant acknowledges that the Premises may be used for storage only; **IT IS UNLAWFUL TO USE THIS STORAGE FACILITY AS A RESIDENCE** or for animal habitation. Upon termination of this Rental Agreement, Occupant shall remove all Occupant's personal property from the Premises unless such property is subject to Owner's lien rights as referenced in paragraph 6 and shall immediately deliver possession of the Premises to Owner in the same condition as delivered to Occupant on the commencement date of this Rental Agreement, reasonable wear and tear excepted. By placing his **INITIALS HERE** _____ Occupant acknowledges that he has read and understands the provisions of this paragraph and agrees to comply with its requirements.

NV 03/03                                Rental Agreement Page 1 of 3     INITIALS HERE _____ / _____
                                                                         Prop. Mgr.    OCCUPANT

4. INSURANCE. ALL PERSONAL PROPERTY STORED BY OCCUPANT AT OCCUPANT'S FACILITY IS OCCUPANT'S SOLE RESPONSIBILITY. OCCUPANT UNDERSTANDS THAT OWNER WILL NOT INSURE OCCUPANT'S PERSONAL PROPERTY. OCCUPANT IS ADVISED TO PURCHASE INSURANCE FOR HIS PERSONAL PROPERTY. INSURANCE IS AVAILABLE AT THE FACILITY AND THROUGH MOST INSURERS. TO THE EXTENT OCCUPANT DOES NOT OBTAIN INSURANCE COVERAGE FOR THE FULL VALUE OF OCCUPANT'S PERSONAL PROPERTY STORED IN OR ON THE PREMISES, OCCUPANT AGREES OCCUPANT WILL PERSONALLY ASSUME ALL RISK OF LOSS, INCLUDING DAMAGE OR LOSS BY BURGLARY, FIRE, VANDALISM OR VERMIN. OWNER AND OWNER'S AGENTS, AFFILIATES, AUTHORIZED REPRESENTATIVES AND EMPLOYEES ("OWNER'S AGENTS") WILL NOT BE RESPONSIBLE FOR, AND OCCUPANT HEREBY RELEASES OWNER AND OWNER'S AGENTS FROM ANY RESPONSIBILITY FOR, ANY LOSS, LIABILITY, CLAIM, EXPENSE, DAMAGE TO PROPERTY OR INJURY TO PERSONS ("LOSS") THAT COULD HAVE BEEN INSURED (INCLUDING WITHOUT LIMITATION ANY LOSS ARISING FROM THE ACTIVE OR PASSIVE ACTS, OMISSION OR NEGLIGENCE OF OWNER OR OWNER'S AGENTS) (THE "RELEASED CLAIMS"). OCCUPANT WAIVES ANY RIGHTS OF RECOVERY AGAINST OWNER OR OWNER'S AGENTS FOR THE RELEASED CLAIMS, AND OCCUPANT EXPRESSLY AGREES THAT THE CARRIER OF ANY INSURANCE OBTAINED BY OCCUPANT SHALL NOT BE SUBROGATED TO ANY CLAIM OF OCCUPANT AGAINST OWNER OR OWNER'S AGENTS. The provisions of this paragraph will not limit the rights of Owner and Owner's Agents under Paragraph 5. Occupant understands that if Occupant elects to obtain the insurance available at the Property, the additional amount for such insurance coverage must be included with the monthly payments as noted above. Further, all payments received will be applied as noted above. By placing INITIALS HERE_____, Occupant acknowledges that he understands the provisions of this paragraph and agrees to these provisions and that insurance is Occupant's sole responsibility.

5. LIMITATION OF OWNERS LIABILITY; INDEMNITY. OWNER AND OWNER'S AGENTS WILL HAVE NO RESPONSIBILITY TO OCCUPANT OR TO ANY OTHER PERSON FOR ANY LOSS, LIABILITY, CLAIM, EXPENSE, DAMAGE TO PROPERTY OR INJURY TO PERSONS ("LOSS") FROM ANY CAUSE, INCLUDING WITHOUT LIMITATION, OWNER'S AND OWNER'S AGENTS' ACTIVE OR PASSIVE ACTS, OMISSIONS, NEGLIGENCE OR CONVERSION, UNLESS THE LOSS IS DIRECTLY CAUSED BY OWNER'S FRAUD, WILLFUL INJURY OR WILLFUL VIOLATION OF LAW. Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property. OCCUPANT AGREES THAT OWNER'S AND OWNER'S AGENTS TOTAL RESPONSIBILITY FOR ANY LOSS FROM ANY CAUSE WHATSOEVER WILL NOT EXCEED A TOTAL OF $5,000. By placing his INITIALS HERE_____ Occupant acknowledges that he understands and agrees to the provisions of this paragraph.

6. OWNER'S LIEN. Occupant's personal property in or on the Premises will be subject to a claim for a lien in favor of Owner and may be sold to satisfy that lien if the rent or other charges due under the Rental Agreement remain unpaid for 14 consecutive days. In addition, if rent or other charges due under the Rental Agreement remain unpaid for fourteen (14) days or more, Owner may terminate Occupant's right to use his individual space.

7. RIGHT TO ENTER; INSPECT AND REPAIR PREMISES. Occupant shall grant Owner, Owner's Agents or the representatives of any governmental authority, including police and fire officials, access to the Premises upon three (3) days' prior written notice to Occupant. In the event Occupant shall not grant access to the Premises as required, or in the event of an emergency or upon default of any of Occupant's obligations under this Rental Agreement, Owner, Owner's Agents or the representative of any governmental authority shall have the right, but not the obligation, to remove Occupant's locks and enter the Premises for the purpose of examining the Premises or the contents thereof or for the purpose of making repairs or alterations to the Premises and taking such other action as may be necessary or appropriate to preserve the Premises, or to comply with applicable law including any applicable local, state or federal law or regulation governing hazardous or toxic substance, material or waste, or to enforce any of Owner's rights. In the event of any damage or injury to the Premises or the Property arising from the negligent or deliberate act or omissions of the Occupant, or for which Occupant is otherwise responsible, or if Occupant fails to remove all personal property from the Premises upon termination of this Rental Agreement, all expenses reasonably incurred by the Owner to repair or restore the Premises or the Property including any expense incurred in connection with any investigation of site conditions, or any clean-up, removal or restoration work required by any applicable local, state or federal law or regulation or agency regulating any hazardous or toxic substance, material or waste, shall be paid by the Occupant as additional rent and shall be due upon demand by the Owner.

8. TERMINATION AND DEFALT. Owner may terminate this Rental Agreement at the expiration of any term by giving written notice to Occupant by certified mail not less than seven (7) days before expiration of the term, or two (2) days if Occupant is in default under the Rental Agreement. Occupant may terminate this Rental Agreement at any time by giving two (2) days oral or written notice to Owner. If Occupant defaults under any of his obligations under this Rental Agreement, Owner may pursue any remedies available to Owner under applicable law or this Rental Agreement. Owner's decision to pursue one remedy shall not prevent Owner from pursuing other available remedies.

9. CHANGE OF ADDRESS AND NOTICES. In the event Occupant shall change Occupant's address or alternate name and address as set forth on this Rental Agreement, Occupant shall give Owner written notice signed by Occupant of any such change within ten (10) days of the change, specifying Occupant's current address and alternate name, address and telephone numbers. Changes of addresses or telephone numbers cannot be effected through the listing of such information on return envelopes or checks. Except as otherwise expressly provided in this Rental Agreement or by law, any written notices or demands required or permitted to be given under the terms of this Rental Agreement may be personally served or may be served by first class mail deposited in the United States mail with postage thereon fully prepaid and addressed to the party at the address provided for in this Rental Agreement. Service of any such notice or demand shall be deemed complete on the date of deposit with postage thereon in the United States mail or upon delivery, if personally delivered.

10. RULES AND REGULATIONS. The rules and regulations posted in a conspicuous place at the Property are made a part of this Rental Agreement and Occupant shall comply at all times with such rules and regulations. Owner shall have the right from time to time to promulgate amendments to the rules and regulations. Upon the posting of any such amendments or additions in a conspicuous place at the Property, they shall become a part of this Rental Agreement.

NV 03/03                                                     Rental Agreement Page 2 of 3    INITIALS HERE _____
                                                                                              Prop. Mgr.    OCCUPANT

11. MISCELLANEOUS.
(a) Occupant shall provide, at Occupant's own expense, ...ck for the Premises which Occupant deems sufficient to s... the Premises. Occupant shall not provide a key and/or combination to Occupant's lock to Owner or Owner's Agents.
(b) Electricity which may be supplied to the Premises is to light the Premises for Occupant's convenience in viewing and accessing stored goods only. Occupant shall turn off the lights when leaving the Premises. In the event electricity is used other than as above, Occupant shall pay an additional charge upon notice from Owner.
(c) Occupant shall not make or allow any alterations without the prior written consent of Owner.
(d) Occupant hereby authorizes Owner to release any information regarding Occupant as may be required by law or requested by governmental authorities or agencies, law enforcement agencies, or courts, or to others for marketing and similar purposes.
(e) Occupant shall not assign or sublease the Premises. Owner may assign or transfer this Rental Agreement without the consent of Occupant and, after such assignment or transfer, Owner shall be released from all obligations under this Rental Agreement occurring after such assignment or transfer. All of the provisions of this Rental Agreement shall apply to, and be obligatory upon the heirs, executors, administrators, representatives, successors and assigns of all the parties hereto.
(f) Time is of the essence.
(g) This Rental Agreement shall be governed and construed in accordance with the laws of the State of Nevada. If any provisions of this Rental Agreement shall be invalid or prohibited under such applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Rental Agreement.

12. NO WARRANTIES; ENTIRE AGREEMENT. Owner hereby disclaims any implied or express warranties, guarantees or representations of the nature, condition, safety or security of the Premises and the Property and Occupant hereby acknowledges, as provided in paragraph 1 above, that Occupant has inspected the Premises and the Property and hereby acknowledges and agrees that Owner does not represent or guarantee the safety or security of the Premises or the Property or of any personal property stored therein, and this Rental Agreement does not create any contractual obligation for Owner to increase or maintain such safety or security. This Rental Agreement sets forth the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements or understanding with respect thereto. With the exception of posted rules and regulations as noted in paragraph 10, there are no representations, warranties, or agreements by or between the parties which are not fully set forth herein and no representative of Owner or Owner's Agents is authorized to make any representations, warranties, or agreements other than as expressly set forth herein. This Rental Agreement may only be amended by a writing signed by the parties.

13. INCORPORATION OF PROVISIONS ON PAGES 1 AND 2. By placing his INITIALS HERE _____, Occupant acknowledges that he has read, is familiar with and agrees to all of the provisions printed on the previous pages of this Rental Agreement, and Owner and Occupant agree that all such provisions constitute a material part of this Rental Agreement and are hereby incorporated by reference.

IN WITNESS WHEREOF, the parties hereto have executed this Rental Agreement the day and year first above written.

PUBLIC STORAGE, INC.                                OCCUPANT

_____                     _____
Property Manager

**PROPERTY COPY**

END OF RENTAL AGREEMENT
Make checks payable to: **PUBLIC STORAGE, INC.**

NV 03/03                                                                                  Rental Agreement Page 3 of 3



## OCCUPANT INFORMATION SHEET
(PLEASE PRINT LEGIBLY)

**Customer Information**

Name: Steve DeLong  
Social Security #: [redacted]  
Address: 6155 Plumas  
Apt. No.: 182  
City: Reno  
State: NV  
Zip Code: 89509  
Home Phone: 775 825 3185  
Driver's License or State ID No.: NV0800861971  
State: NV  
Employer: Self Employed  
Cell Phone:  
Work Address: Above  
Additional Phone: 786 6700  
Work Phone:  
E-mail Address:

**Persons Authorized for Access**

Name: Margaret DeLong  
Name:  
Name:

**Marketing Information**

How did you hear about Public Storage?

- A. Drove by; saw promotional banners or flags
- B. Word of mouth; a friend told me
- ☒ C. Yellow Pages advertisement
- D. Television advertisement
- E. Radio advertisement
- F. Direct mail coupon or advertisement
- G. Newspaper advertisement
- H. Found on Internet
- I. Other: _____

Have you rented storage space before?  Yes ☐  No ☒   From Public Storage?  Yes ☐  No ☒  
Have you rented storage containers before?  Yes ☐  No ☒   From Public Storage?  Yes ☐  No ☒

**Alternate Contact**

Name (Friend or relative at a different address): Margaret DeLong  
Relation: Mother  
Address: 6155 Plumas  
Apt. No.: 182  
City: Reno  
State: NV  
Zip Code: 89509  
Home Phone: 775 825 3185

**Delivery Address (Pickup Service only)**

Address:  
Apt. No.:  
City:  
State:  
Zip Code:  
Apartment Complex Name:  
Nearest Cross Street:

Tenant Signature: Steve M DeLong  
Date: 4-4-03

**Office Use Only**

A. ☐ Walk-In  ☐ Referred by Property #: _____   B. ☐ Phone Reservation (Call Center)   ☐ On-line Reservation (Internet)  
Gate Code (Self Service):  
Space Number(s) (Self Service) / Account Number (Pickup Service):

00001A  
5/02

(English)

